Good morning, Your Honors, and my name is Attorney Shawn Louise, and I represent Rodolfo Asuncion, who commonly goes by the name Rudy, who's the plaintiff appellant in this matter. And I thank the Court for having an oral argument, and I hope to answer the specific questions that were set out in the order that was filed May 27, 2025, as well as any other questions that please the Court. Forgive me for interrupting, but I should have started with that. Did both counsel receive our focus order? Thank you for confirming that. Go right ahead. Oh, thank you, Your Honor. So I think that the, I appreciate Your Honors focused on this issue with the different numbers that were exchanged with counsel, which was me, with the DLA, Mr. Somerville, the operative who was trying to transmit the final agency decision to me, and it's interesting that the numbers don't match, and that might be a big reason why the file was encrypted and I was unable to access it for the amount of time that I tried to do so. And I did want to just point out that there were some things that I noticed in reviewing the excerpts of record from both the government and from myself. If you look on the initial page of the excerpts of record on page 58 of the record, the number identified is DLAF 21-0424, but then you go to page 2 to the end, and it's actually a different number, it's 20-0424. There are different numbers. Yes. And then also on page 86, there's another number there, DLAF 20-0420, which is a third number, and then there's also the designation at the end. So, counsel, we have – your time is ticking away there. We have different case numbers, right, as you have pointed out, and we have different passphrases, right? Yes. So what should we conclude from this? So I would conclude from that that the government transmitted the wrong case numbers to me and the password, so I was unable to open the encrypted file. And I think when – Was it the correct case number, or was it an icon that you would poke on and you needed to be able to put in a password, or did you also need the case number? You had to actually copy and paste. So what I would do is I would either type – I would take – there was three. There was like a – I forget the exact word, but there was like a passphrase, another phrase, and then a password. Do we have a screenshot of that? Yes. Okay. What's the ER site for that page? Or maybe you can give it to me when you come back. I don't want to take up a lot of your time. Oh, okay. And on those documents, you have to either manually type it into each phase when it asks you to enter the information. And I kept getting an error message, so I was unable to open it. So one of the phrases – what I remember was I didn't even get to the third password. I was prevented – when I tried to do the first two, that's where the glinch was and it didn't let me proceed to the third to enter the passphrase. And this isn't my first case with the federal government. Excuse me. What do you mean you wouldn't let you proceed? So you got the wrong passphrase, then you got the wrong passphrase again, and then on that same day that you got the wrong passphrase, about an hour later you got the right one. You're saying you couldn't use that one? Is that what I just heard you say? Yeah. All – How come? Both appear to be incorrect numbers. Well, you got the incorrect numbers twice, and then you got the right number. And you're telling me you couldn't use the right number? Is that what I'm hearing you say? For some reason it was still encrypted and would not open. I believe all the numbers were incorrect, even at – They finally sent you the correct number, but without acknowledging that the previous numbers had been incorrect. Yes. And I was still unable to open it. Did you try using the correct number, or do you recall? I recall trying to use the correct number and it still did not open. But what I couldn't figure out is whether, once you got what I understood to be the correct number, whether you had the correct case number. Because it seems like you had to have both at the same time. There were three things, three windows that had to be filled in, and you would have had to have the correct – I think that's why you couldn't get to the passcode. Yes. Right, because the case number you were putting in wasn't popping up, if I'm understanding it correctly. You get – you click on the link. Yep. And then you either type or copy and paste what's transmitted to you in one email – Sir, right there. You're not being very specific. Forgive me, but do you mean you copy the case number before you need to put in the passcode? Fine. Because it seems like you had different case numbers and different passcodes. Yes. Is that right? That's correct. Okay. In whatever the sequence was, I've done this before, and I've downloaded encrypted documents, and whatever I normally do was not working. So that is for sure. All right. So we've eaten up quite a bit of your time. Do you want to go into any of the other points, or would you like to reserve time for rebuttal after we hear from the government, or what would you like to do? I'd like to reserve time, my time, for the four minutes from the government. Do you have any questions at this point, Judge Fletcher? Okay. Let's do that. We'll reserve your four minutes. Thank you. May it please the Court. Good morning. Tracy Weinstein on behalf of the United States. I'd like to first address the questions that the Court had in the May 27th docket order, then discuss why equitable tolling doesn't apply here. And then touch upon why it was correct for the District Court to deny reconsideration. So I can go through each of the inconsistencies and the typos that the Court did point out, but I think it's really important to note that the punchline here is that none of these inconsistencies affect the outcome here or the analysis. Let me interrupt you, though. Are you assuming that he simply could not access the file? You're saying that the limitation period runs even though he couldn't access the file? Correct. Because the analysis is about the receipt of the notice of the final agency. Okay. So let me make sure I understand your position. Your position is the government can, quote, send something to him that he is absolutely incapable of accessing, but the period runs from the time you sent it, irrespective of the fact you sent it to him in a form when she could not access it. That's your position? Yes, Your Honor. Why do you acknowledge that there was a mistake that occurred here? I mean, I assume that the agency is not regularly sending out the wrong case numbers and pass code. So in this instance where an erroneous number was clearly sent, I think, I mean, I actually haven't heard you acknowledge that, but it sounds like you agree. Do you agree that an incorrect pass code was sent? Your Honor, I think it's unclear whether or not it was the incorrect pass code because we don't know whether Mr. Luis attempted using that first pass code before the link had expired already. No, no. I'm sorry. That can't be right. We have it here. We saw the number that was sent was the wrong one. You can't contest that. Your Honor, it could possibly. So I spoke with Mr. Somerville and what happens is you choose the pass phrase. So it's possible that he put that pass phrase in for this decision. What we do know is that... You can't say with certainty that you sent the correct case number and the correct pass code. That's correct, Your Honor. All right. And what we're looking at are numbers that appear not to match. Correct, Your Honor. Okay. So without the ability to say with certainty that this is the correct number, why not just acknowledge that an error occurred here that made it impossible for the plaintiff to access the FAD? Your Honor, I agree with what you're saying and that's that we don't know and we're not trying to deny that the wrong thing was possibly sent. What do you mean possibly was sent? I have the numbers right here in front of me. They were the wrong numbers. Exactly, Your Honor. But what I'm saying is that it's possible that that was the wrong number was used for the correct file. So who bears the consequences of this mistake? Sure. So I think, Your Honor, no matter what happened here, we can concede that there was a mistake. We can say, let's say, assuming 100 percent. You kind of have to. Sure. Or that's the way the three of us are reading it.  So you want to go on to your next point? Yeah. So my next point is that the tolling for the 90 days is not affected by this. What this applies to is the equitable tolling here. And we still know that equitable tolling is not applicable here because Mr. Louise didn't satisfy the two elements, and both elements are required, that he acted diligently and that there was extraordinary circumstances that kept him from filing on time. So if the extraordinary circumstances are that he received the wrong number, it's not typical, that's extraordinary. Why isn't the diligence factor satisfied here based on the sort of repeated communications that your office received to get access to the FAD? Yes, Your Honor. I think if you look really closely at the record, you can see that diligence, there wasn't full diligence. Mr. Louise first waited three days to try to access the file the first time. And then when he couldn't access the file, he waited a week in between following up. And then when he couldn't access it that other time on November 21st, he waited another week till December 3rd to contact us to try to get the file. On top of that, there's nothing in the record indicating that he followed up a single time with a phone call in between any of these week periods. The government was communicating with him, not by phone call. The government was communicating by email, right? And on November 14th, he received two emails with two different pass phrases, right? So one of them has to be wrong, right? Then on November 21, he emailed, I still cannot open it. Please send by mail. The government didn't do that. He sent another email on December 3rd, another email requesting, please just send by mail. And of course, there's Thanksgiving in there. And then December 5, the encrypted version was emailed and receipt was confirmed. Then there's the email exchange where I think they were miscommunicating pretty clearly when he says thank you with an exclamation mark. He thinks that he's reading that one way and they're reading it a different way. But these intervals that you've just described don't strike me as excessive or unusual. You feel that he was not diligent? They demonstrate lack of diligence? Is that it? Yes, Your Honor. I think that when you're concerned about a statute of limitations issue or accessing this final agency decision, I think waiting a week in between and not following up with a phone call is. Why is it fatal to his claim that he waits a week? He's got 90 days. We're at the very beginning and lawyers are busy. He waits a week. Why is that negligence or delay on his part? I think because of the exact reason that we're here today is that this sort of situation can happen. Well, and he has 90 days and he waits a week. And that's fatal to his claim? Well, he waited a week multiple times. Two times, right? Yes, Your Honor. Multiple of two. The certificate of service was November 8th. Got two emails on November 14th from the government. He couldn't have opened it until November 14th, right? That's the first time he got a passcode? Correct, Your Honor. Okay. So the time between November 8th and November 14th, that week doesn't count against him, right? He can't open it. They hadn't given him any passcode at that point, right? From November 8th to November 14th. Right. Yes, he couldn't open it. Right. He got two emails on November 14th with two different passcodes, right? Then he waited one week, as you and I think Judge Fletcher just discussed, between November 14th and November 21st. And then he said, you know, I still can't open it. Please send by mail. The government didn't. Then December 3rd, I still can't open it. Please send by mail. And then December 5th is when it was received. So we're really talking about, I think, all in one month out of the three. Yes, Your Honor. And even with that point, I think it's really important to point out that even if Mr. Louise was mistaken after he followed up with Ms. Lewis, because he was concerned, he wasn't sure when his statute was going to run from. So he asked Ms. Lewis, I can get into those emails. But I think the really important point is that no matter what happened with those emails, the Ninth Circuit has specifically held that an attorney's miscalculation of time is not an extraordinary circumstance that warrants equitable tolling. Well, wait a minute. How did he miscalculate the time? Lewis emails him on December 14th, saying, according to 29 CFR 1614, the time starts when you, as the attorney, received the FAD. That's the final agency decision. He interprets that to mean when he actually received it. Okay, so time runs from that. Why is that a misinterpretation of that email from Lewis? Yes, Your Honor. I think it's really important to read both of Ms. Lewis' emails. She sent him an email, GR107. That's her first email. And she says, the final agency decision was emailed to your email address, attorneylewis at gmail.com, on November 4th, 2022. She meant November 8th. See, I agree with you that his interpretation of the email was incorrect. That in fact, these are, they're not connecting on the same topic. But if we're, if we agree that the statute of limitations begins to run at the time that you received the FAD, but now we've moved on to equitable tolling, so we're not really talking anymore about the calculation of the statute of limitations period. We're talking about the tolling, which allows us to stay the statute of limitations period for the time where the government was sending the wrong passcode to him. So, I mean, it sounds to me like you're arguing one point, but that's, that's not really relevant to the equitable tolling analysis. So Your Honor, to that point, I think if you broke down the timing, he still would have been late because he filed on the 88th day from December 5th, 2022. So that would have, even if that period from November 8th to November 14th was tolled, I believe he would have been way past it regardless. I don't think that's right. I think that if the time is tolled, then he's within the statute of limitations period. So tell . . . By one day. Starting from which date, Your Honor? Well, he got, I didn't mean to jump in on top of Judge Desai's question, but I think we're both, all three of us calculating that he didn't get any passcode until November 14th. He got two different ones on November 14th, but I don't see a universe where the time between November 8th and November 14th is running because he literally can't open it. So I think . . . Are you including that week? Yes. And I think that it's still, I would have to break down the calculations. Okay. So let me just, I don't mean to be absurd here, but if I'm understanding the government's position correctly, it is that on November 8th, when a certificate of service was sent that the government, this would never happen, but that the government could send a certificate of service giving notice that a decision has been entered and not send the passcode until the 88th day.  That's correct, Your Honor. And the courts have held, I mean, in the Irwin case, they state that if a plaintiff is truly concerned about this or something like this happens, they can file a basic claim just to preserve their statute of limitations and then supplement that later. Irwin says that explicitly. We've also talked a lot about the government needing to be fair in dealing with people. And I fully appreciate that there are authorities that have looked at slightly different fact patterns, like where a lawyer had mail and didn't choose to open it, you know, goofy situations like that, where equitable tolling, I think, really clearly demonstrates a lack of diligence. But on this one, I'm struggling with it. I'm not sure if we got an answer to your question, Justice. Did I? I mean, it seems to me that the math is the most important part of your case. It's surprising to me that you don't know the exact numbers of days from the time that he actually was able to open the email and access the FAD to the time that he filed. But my calculation shows that he's within that statute of limitations if we apply equitable tolling. I believe, I apologize, Your Honor. My calculation may have been off, or I may have miscalculated from a date that, from our position, we didn't think would have been tolled under. Okay, so your position is that the statute, sorry, your position is that he would still be late because you think he would have filed on, how many days would have passed? He filed on the 88th day from December 5th, 2022. And that was March 3rd, 2023, which was 115 days from November 8th, 2022. So you're starting the clock on November 8th. That's where we started the clock from, arguing that a tolling wouldn't apply. Right, so you are doing the math, assuming tolling does not apply, and what I'm asking you is if tolling does apply, then he's within the 90-day statute of limitations, correct? I didn't calculate it that way, Your Honor, just because I subtract, so 115 days is when he filed, and if we're counting from November 14th, I think that's only a nine-day difference from 115 days. So it would still be, it would be 106 days. I think we understand your position. Thank you. Are there any further questions for counsel? No. Thank you for your argument. We'll hear rebuttal. So I think the government's argument, I just have a hard time wrapping my head around this because it's like, who is really at fault in this situation? It's like, I'm the innocent party. I'm just asking and trying to get a final agency decision copy, and I'm being accused of not being diligent for waiting a week to send an email. It's like, as Your Honor pointed out, lawyers get busy, you have other cases, you go to download this document and it should be there, you should be able to access, but it makes you think about, what if the government sent an envelope and it was empty? What if there was no final agency inside it, it was postmarked, and you get the envelope, you open it, and there's nothing inside it? Or what if there was a malfunction with their printer and the pages were blank? So, in this case, as far as the equitable tolling, counsel for appellant was using best efforts to try to get a copy of the final agency decision, and then even ... Can I interrupt you because I think we appreciate your argument on this point. What I'm interested in is how you would have us fashion a rule. What do you think the rule ought to be in the Ninth Circuit about what it takes to start the clock? So, I'm kind of thinking with this case, this might be fact-specific, so I'm not so sure if ... That's not what I asked you. Okay. Because when we publish an opinion, it has to have broad application, so you've got this case law, you've both cited it and explained it to us at length in your briefing. What do you think is the best reasoned decision about what it takes to start the Ninth Circuit? I think the Ninth ... Sorry, Your Honor. Not at all. I think the Ninth Circuit should protect the citizens and plaintiffs of the Ninth Circuit. I think the unequal positions between the government and plaintiffs not being equal in the situation that ... I think the best rule would be that it's 90 days from actual receipt of the final agency decision. So, we have a certificate of service that in any other universe, we'd say, well, that's it. That's the certificate of service, November 8th. But that's rebuttable. Well, let me just ask you, am I right from my little scribbles here, I've made this timeline right, and I think we're all looking at the same dates. When the certificate of service came, it announced a decision had been entered, and then there was no passcode until November 14th. Is that right? That's right. And then on that day, there were two different passcodes? Yes. Okay. I don't have anything further. Do you have anything further? I think we're ready. Is there any closing remarks you'd like to make? Yeah, there was just ... I was going to say something. I forgot. I lost my train of thought, but ... Not at all. I think we have your argument. Oh, okay. We want to thank both of you for your careful preparation today, and we'll take that case under advisement and go on to the next case on the calendar. Thank you very much, Your Honors. Thank you. Aloha. Thank you both. Thank you both.
judges: FLETCHER, CHRISTEN, DESAI